You may be seated. Thank you. Mr. Kline. May it please the court, my name is Stephen Kline on behalf of Dennis Fusaro. Clever censorship is still censorship. Maryland Code Election Law Section 3-506 is clever censorship. By denying access as a pretext on residence or registered voter status, the law blocks the content, excuse me, still effectively serves to censor Mr. Fusaro and anyone else not registered to vote in Maryland from using the most effective political tool. The reason for the court below dismissed this was largely following the United Reporting decision, but it overlooked an important caveat upheld in United Reporting by six of seven judges in the majority opinion in two separate concurrences who addressed that it's when you deny access to a public record but it is provided to other people for a specific use of content, as the list is provided here to citizens for purposes related to the electoral process. This raises an entirely different, this raises a different matter entirely. And that is what has happened here. The court below did not acknowledge that. I think this, we need to look no farther than the actual oath signed by these other third parties to indicate that this is not just about government denial of a public record. This is about government denial, this is about third party prohibitions on providing this same information to Mr. Fusaro and to anybody else. And in page 20 of the joint appendix, we know that this oath is prescribed by law in part A of the law and also provides part A2, allows the Board of Elections to add to this or to draft this oath. And we see that anyone signing this, I am aware of it. If I use the list for commercial solicitation or any other purpose not related to the electoral process or make the list available to the public or third parties or publish or republish the list in a way that allows it to be used in that manner, I will be guilty upon conviction of a misdemeanor and subject to punishment. This is another important distinction from United Reporting as far as a facial challenge goes. This is not just Mr. Fusaro saying, hey, I'm being denied access and others might be denied access too. No, we have criminal penalties here if he accesses even from third parties. Not just charges for them but charges for himself too because we have a separate statute, section 16-501, that can have him charged for procuring a false oath under the Maryland Election Code. Even removing away from this content-based restriction, there's an important distinction here between this and just simple public records. McBurney v. Young is a controlling precedent on privileges and immunities doctrine where non-residents trying to access, for example, internal emails at the Department of Family Services or accessing property records. These things all serve a different governmental function. Here we have, and it's the opposing counsel's brief really details, a unique political tool that is drawn, as far as private citizens, is drawn strictly for this purpose, strictly for this electoral process purpose. Let me ask you this. Do you have standing to challenge the restrictions on the use of the list? Your Honor, I believe the use of the list ties into access, and in that way we do. I believe it will become ripe for Mr. Fusaro's own use of the list the moment he has it. But our argument, and it's really important, that this segregation of the access and the content prongs are not as clear or not as clean as the court below meant to make it up. But you were denied the list because of your registered voter status. Is that right? That is correct, Your Honor. But the fact remains that this list is nevertheless provided to other people, to registered voters, strictly for a specific content purpose, and in that way it circles back around and I think negates the residency or registered voter requirement as but a pretext. And it doesn't fit as neatly into United Reporting or into McBurney v. Young as we can make that out to be. Again, it's a clever form of censorship, a clever way of saying, hey, wait two years for a parade permit by going and finding this information yourself or possibly buying a list from a mythical person who's built one but not acquired this. But I think it effectively has that same problem. You make it sound as if the Maryland legislature was acting maliciously. Your Honor, we did not bring a claimant in that context, but I would say they couldn't have done it better if they tried. This clever form, again, this provision of a valuable and invaluable political tool really, whether it's for electoral speech or for issue advocacy, being cut off, it amounts to a form of political nativism that this very court, I think, in Libertarian Party of Virginia v. Judd, shut down rightfully when they do direct forms of censorship. But now we have sort of an indirect that can operate the same way. As we describe in our brief, and I think this is important, that particularly in the as-applied context, as applied to this list, allowing access and recognizing that it is what it is, in fact, a very important exception to public records doctrine just in and of itself, will not overturn McBurney v. Young. It will not open up the floodgates to constitutional claims or First Amendment claims about any public record. Rather, but upholding the court below, will basically open the doors to nullifying Libertarian Party of Virginia v. Judd. You can imagine how many records there are, as we describe in our brief, right on the Maryland Board of Elections website that describe, hey, if we're going to tell you you're a non-resident, you can come into our state and you are constitutionally allowed to gather signatures. But instead, no, all those instructions, those are all going to be public records now. And we're just not going to tell you how to do that. The idea that that wouldn't raise constitutional problems, I think, is highly problematic. And I think this is really a first, possibly a first step in that direction. Upholding the court below, I think, raises that threat. I think it's most important here, again, to really look at IMS Health v. Sorrell. And that's, again, which itself, distinguished from United Reporting, in discussing that, look, we have criminal implications here for third parties, for Mr. Pissarro who tries to get it from third parties, and we also, moreover, have someone who's actually filled out the list themselves, actually applied for it. It's not merely hypothetical, and I think that's, again, going back to Section 16-501, we have serious problems here that trying to get it from third parties, and that third-party prohibition. And I should also point out, as far as standing goes, that in IMS Health, we were talking about data miners and people who had not accessed that list from third parties as of yet. They knew that they were prohibited, so they didn't do it. No further questions. All right. Reserve my time for rebuttal. Thank you. Mr. Taranto. Taranto? Yeah, Taranto. Thank you, Judge Gregory. Your Honors, may it please the Court, my name is Andrea Taranto. I'm with the Office of the Attorney General of the State of Maryland. I represent the appellees in this matter. Section 3506 of the Maryland Election Law article makes available to Maryland registered voters a copy of a list of registered voters, provided they swear an oath that the list is not intended to be used for commercial solicitation, and it's not intended to be used for any other purpose, any purpose not related to the electoral process. These conditions of access to information in the State of Maryland's possession do not run afoul of the First Amendment. They do not regulate how Mr. Fusaro may use information that is already in his possession or that he may come to possess through other means. Moreover, they are substantively indistinguishable from access conditions imposed by statutes of the Supreme Court upheld in the United Reporting case and upheld in McBurney v. Young. Mr. Fusaro knows this. That's why he's tried to characterize the voter list as something other than a record generated by the government in response to a request. He claims it's more akin to an electoral tool like a petition form that exists solely to influence the electoral process. These efforts are in vain. The voter list consists of information held entirely in the possession of the state. The state has no First Amendment duty to provide that information. The state may condition access to that information on its possession so long as it does so on bases that are not constitutionally suspect. The bases on which it has chosen to do so in this case are not those. These inescapable facts are fatal to Mr. Fusaro's claim. First, Section 3506 does not prohibit Mr. Fusaro from engaging in speech. He may acquire a list of Maryland's over 4 million registered voters by other means. There are third parties that make such lists available. He may send his letter to all addresses in the state of Maryland if that's unavailable to him. It simply regulates access to a record that is generated in response to a request for information held entirely in the possession of the government. The Houchins case makes clear that there is not a First Amendment right to access information held by the government. The McBurney case makes clear that a state may constitutionally limit access to its own public records by a state FOIA request to its own citizens. And the United Reporting case makes clear that a state may impose limitations on the use of information or records obtained from the government provided it does not discriminate on the basis of viewpoint or some other prescribed criterion. Justice Ginsburg in her concurrence in that case identified political views and also pointed to the situation raised by Justice Scalia in his concurrence that if a journalistic entity were to lawfully obtain access to the list, the list in that case was an address list held by the Police Department of Los Angeles, and published that list, then a person who obtains that information from the public domain can do with it as he sees fit. Bissarro struggles to pull this case out from under the weight of these precedents, mostly by ignoring them. Instead, he likens his request for the voter list to this court's decision in Libertarian Party v. Judd, where the court struck down a Virginia requirement that petition circulators be residents of the state of Virginia. But Judd is of no benefit to the plaintiff in this case. The court in that case aligned itself with other circuits that acknowledged a consensus around the fact that petitioning restrictions, like the one at issue in that case, were subject to strict scrutiny analysis. The reason that line, what would be the analysis? Rational basis or strict scrutiny here? In this case, I believe it's a rational basis. At most, I think it's an immediate scrutiny, but it's a content-based discrimination that in the context of access restrictions on information held in the government have been upheld by the courts, including United Reporting. But I think it's important to explain what the framework that the Libertarian Party v. Judd case was analyzed under. And it was analyzed under strict scrutiny because it arose from, not from a First Amendment speech doctrine analysis, but it arose from an election regulation analysis. Strict scrutiny arises from the balancing test in that case that applies to burdens imposed by election laws dictated by the Supreme Court's decision in Anderson v. Celebrezze and Burdi v. Takashi. Under that test, an election regulation that imposes a severe burden is subject to strict scrutiny and will be upheld only if it is narrowly tailored to serve a compelling state interest. In that case, the Libertarian Party and its members' associational rights were impeded by the restriction on their ability to hire out-of-state petition circulators to obtain ballot access. In this case, Mr. Fusaro disclaims any electoral purpose. He does not intend to use this for any electoral purpose at all. Therefore, the framework at issue in Judd simply doesn't apply in this case. This is a First Amendment case, and it's governed by the United States. So you say there's no connection to electoral purpose at all? He disclaims any electoral purpose to his. He admits he does not intend to use the list that he is seeking for an electoral purpose. You mean, in other words, he's not running for an office? He's not running for an office, and he's not seeking to use the list to speak to any electoral process in the state. He wants to go after the prosecutor? He wants to, as I understand it, he wants to send a letter to Maryland voters, and he attached his letter to his complaint. He wants to send a letter to Maryland voters complaining about the treatment that he received at the state prosecutor's hands when he was tried for and acquitted, ultimately, of a campaign finance violation. The state prosecutor is not an elected official. He's appointed by the governor with the advice and consent. Is that the case when all state prosecutors in Maryland are all appointed by the governor? The state prosecutor is an office that is attached to the attorney general's office, but it's statutorily prescribed to prosecute certain crimes. So it's not like the county prosecutor? That's correct, Your Honor. It's not the state's attorney. Is that somebody connected to your office? I don't know the exact governmental relationship. He's loosely connected to the office of the attorney general, but there's independence involved. The attorney general is an elected position in the state of Maryland. The state prosecutor is appointed by the governor with the advice and consent. Is he a large group of prosecutors? It's a single state prosecutor's name. A single state prosecutor. Does he have a bunch of assistants and stuff? He may have some assistance. Your Honor, I apologize. But the state prosecutor is the title. That's correct. And this fellow was indicted on a misdemeanor charge or something and was acquitted. That's correct, Your Honor. And he's mad about it. That's my understanding. He's got some background here, and that's apparent on this record, isn't it? That's correct. And he wanted to send out this letter to everybody who registered in Maryland. He wanted to send out this letter to Maryland voters to demand or to ask Maryland voters to demand that Mr. Davitt resign. And you say he could get all this information through another source? There are third-party companies that make available voter data. I don't know how they compile their data, but they make available nationwide voter data. It can be purchased state by state. It can be purchased by party. Is that in the record, or are you just making that up here? I'm not making it up, but I don't believe it's in the record. Well, for our purposes of the record, you're making that up, maybe. Fair enough. Unless it's something we could take judicial notice of. But the governor of Maryland is elected, correct? That's right. The governor is elected. So then the purpose is he's trying to influence someone who is elected by the people to do something. Why is that not electoral? Well, his specific letter does not ask the people to impress upon Governor Hogan to force Mr. Davitt to resign. But that ultimately is what you're trying to do, right? If you know the person is not elected, but you know that the person who appoints him is elected, then you're trying to get the electorate to be influenced by saying, wait a minute, a whole of my constituency wants me to get rid of this person. David, I think I should listen to you. That's not a real hard connected dot, is it? I don't disagree, Your Honor. And I don't disagree that there was a way for Mr. Pissarro to draft his letter to make it front and center, full square, covered by the electoral purposes. No, it was a way for you to draft yours. You said electoral. You could have said elections. You didn't. You said electoral, relating to the election of a governor who you want to influence. Why is that not electoral? I mean, for example, you use the language. Well, I don't believe his letter, Your Honor, references the governor at all. I think it's strictly focused on the state process. What word does the statute use? The statute uses purposes related to the electoral process. Electoral. Yes. Electoral process. Yes, Your Honor. And I think that Mr. Pissarro identifies other provisions in the Maryland Election Law article that also use that term, electoral process. And I think from those other provisions, you can tease out what kind of scope that phrase should have. And I'm happy to go into that to help the court. But I want to let me step back and remind the court that this electoral process issue was not the reason why Mr. Pissarro was denied access to the list in the first place. He does not have standing to assert a claim on the basis of the electoral process provision. Did the judge say he didn't have any standing? The judge found that his claim wasn't ripe. And he even says much just now that his claim will be ripe as soon as he's able to come into possession of the list. And his problem is he can't come into possession of the list because he doesn't qualify as a Maryland registered voter. You said he can get it from somewhere else. That's true. You said he can get the list. He can get the list. And there's no indication that the list that he might get from a third party is a list that was provided by the state of Maryland and is subject to the restrictions in the statute. Other political parties, other entities compile this information using data in the public domain. They are able to generate this information on their own. And maybe they use the Maryland list and they have strings attached to it, but that's not in the record. But you don't know how they come about and it's not in the record. That's correct. So you're saying if a Maryland resident wrote this, a resident voter wrote the same letter, they would get the information? A Maryland voter would present the same application that Mr. Fusaro presented. The application doesn't include, it includes an oath that says I intend to use this for no other purpose. And they attached that letter as he did what he proposed to send to the. He didn't attach the letter to the State Board of Elections. The State Board of Elections had no knowledge of what he intended. But that wasn't presented, that letter having to do with the decision was made. That's correct. But that's, somebody put that in the record here in the district court. He has, he attached it to his complaint saying this is what I intend to use. And it has nothing to do with the electoral process. He wants to challenge that electoral process provision and has drafted his letter in such a way so as to be able to bring a challenge. And my position before the court, the state's position is. But he was denied because he was not a resident of Maryland. Was not a registered voter of Maryland. Not a registered voter in Maryland. One condition of which is being a resident, yes. He's a registered voter in Virginia, right? I don't know if he's a registered voter. Is that not in the record? It's not in the record. If it is, I don't. You don't know if he's registered anywhere or not. I understand that he's a resident of Virginia. I don't know where he's, where or if he's a registered voter. He has to be a resident and registered voter. One cannot be a registered voter in Maryland unless one is a resident of Maryland. Right. So you have to be a resident. In effect. That's the only requirement. In effect. But not a registered voter. No. To obtain the list, one needs to be a registered voter. That's what I'm saying. It would be both. Okay. Obviously, one comes with the other. Yes. But the point is that, well, what's the rational basis that only registered voters should have this information? Well, I think registered voters understand that when they submit an application to register to vote, they're turning over sensitive information to the government. They're turning over often sensitive identification information that would justify their residency status. But you give all of it to the people in Maryland. To anybody in Maryland. That's true. Anybody in Maryland can get all of it. Yes. Anybody in Maryland can get it. But I think with the understanding that Somebody in Maryland can get it and give it to him, right? Somebody in Maryland can get it and give it to him provided that that person becomes, that he won't run afoul of the electoral use provision. The problem with his standing issue, Your Honor, is that he's presented a case for standing that he may seek to obtain it from some hypothetical Maryland registered voter or some hypothetical third party. But he has not yet been injured by that provision. It's akin to the case that he cites in support of the standing argument, which is the Byrne v. City of Charleston case. In that case, there was an artist who was challenging the application of an ordinance in the city of Charleston. The artist painted a mural inside of a wall of a restaurant. And the restaurant, which owned the wall and owned the mural, was told by the city that they had to cover it up. The artist sued, saying, this is a violation of my First Amendment rights. And his suit was rejected because he didn't have standing. It wasn't his mural anymore. He had also made the argument that, well, some other restaurant might want to hire me. I may want to get hired to put a mural up in another restaurant, but for the fact that this vague and overbroad ordinance would deter another restaurant from hiring me. And the court rejected that. They said, you can't bring a lawsuit on the basis of such an ephemeral basis of standing. But you have the same situation here. Some other third party, some other Maryland registered voter might want to sell me or give me this list and would be deterred from doing so because of the electoral use provision. I don't think there's been sufficient showing of injury or standing to be able to make that point. This is akin to almost a forum type case. Do you think Maryland could say there's a public square, if you will, and people periodically stand there and they speak their mind about politics or whatever they want to talk about? Do you think Maryland could say you have to be a resident of Maryland to be able to speak on the square? It's not a public square case, Your Honor. It's an access to information case. Isn't it the forum, though? The forum, you're keeping them from the forum to speak. That's the platform. You're right. It's not a physical place, but you know now we have this artificial intelligence world of cyber experience. It's communication platform. It's like saying only a resident can have access to social media. Or you can only get this, and you're saying, and the gate closes there, you got to swear you're only going to use it for this electoral purpose. And he says this is an electoral purpose. McBurney says the state of Virginia can say only Virginia residents can obtain public records through the state FOIA in Virginia. United Reporting says that that- United Reporting, is that your best case? I would say that it's a combination of United Reporting and McBurney. I think those cases together really dictate the outcome here. And United Reporting says that in that case, the restriction on use was limited to, there were address lists, similar to the voter list here in concept. How many votes did it get in the Supreme Court? Seven? United Reporting got, there were two dissenters, so there were a series of concurrences. I think it got to seven. Would the dissenters support his proposition? In this case, his and your opposing counsel? I think there's a, it's possible. I mean, on the face of their argument, does it support his proposition? I would think that it's- So they got a 72 vote supporting your side of it? That's my view, Your Honor. As far as you're concerned? Yes. And this is an as-applied, and they face a challenge? Well, I think this is as applied, certainly it's as applied as to the denial, the basis on which he was denied in the first place, which was the residency, or the registered voter restriction. But he can only bring a facial challenge to the use restriction. He doesn't have, he doesn't have an as-applied injury on the use restriction. And so, in that sense, it's a facial challenge to the use restriction. Okay. And so I think it really is an all for us. The challenge to the use restriction really is an all for us with the- It's an as-applied challenge, and part of it's an as-applied challenge. That's correct. And the as-applied challenge, the registered voter requirement, just is not, it's a- It's only as to the First Amendment. It's not an issue with the First Amendment. It's not an access- But he's raising it. He claims it's a First Amendment issue. I understand he's claiming that, but that doesn't make it so. I'm just asking. All right. Let me speak a little bit about the vagueness issues that we started discussing earlier, as to what exactly electoral process potentially means. I guess, again, the court does not need to reach this issue, but Mr. Fisaro did identify a couple provisions in the election law article. Sections 8-101 and 8-103 deal with the mechanics of elections, things like what to do in cases of emergencies, how to count and canvass votes, etc. Those deal with the electoral process, the mechanics itself. He also identified Section 2102-9 of the election law article, and that refers to information regarding the electoral process, including the text of the election code, relevant portions of the Maryland Constitution, and information gathered regarding elections. I think that those two cases read together paint a broad but clearly defined picture as to what the electoral process is. Distilled on the basis of these provisions, it plainly refers to any aspect of the mechanics of an election or about an election itself, including advocacy or communication about a candidate or potential candidate, a party or potential party, a ballot question or potential ballot question. It includes communicating with voters about candidates, supporting or opposing candidates. It includes asking voters to threaten their elected representatives with a vote for another candidate unless they take some specific action. But his vagueness challenges to the electoral process restriction, that was never applied to him. It was never applied to him. You're right, Your Honor. I'm making this argument asking the court not to reach this issue, but he's raised it, and so I'm even on the merits, I think, that the electoral process restriction is not vague or overly broad. Did the district court deal with it? The district court did not deal with it. Why would we deal with it? Your Honor, I wholeheartedly agree. You've been asked to deal with it by the plaintiff, and so I'm, to the extent the court decides to reach it, I'm asking the court if it reaches the merits to agree with the state. Well, we normally review things that the district courts do. We got some things in here that the district court did. And the district court did those things correctly. There are some things here to be reviewed that he challenges that were ruled on. I agree, Your Honor. That's correct, and the district court ruling was fundamentally correct and should be affirmed. The court does not need to reach the electoral process provision of the statute. This case is more than just access to information compiled or kept by the state. This is information that, isn't it true, that it's only import would have to be political by nature, wouldn't it, the fact that you want registered voters list? Not if you want to sell something to registered voters. There are any number of reasons that wouldn't be political or wouldn't be related to the electoral process. But you said the commercial, right, but this is not a commercial case. There's no evidence that he wanted it commercially. No, there's no evidence that it is, but it's just any intended use. Which is broader than that, though. But then the other side, take commercial out, which you said, but you didn't stop there. You said or, that's in the disjuncted, right? That's correct. So, therefore, the other universe has to be political speech related, doesn't it? What else would you want for other than for political purpose? If you want registered voters, isn't that the way we speak as a democracy, most poignantly, directly? Your Honor, the provision doesn't, and I think there might be problems if it dealt with, if it limited, if the restriction is on the basis of political activity, because I think that's much broader than electoral purposes. That's what the statute says. So I think that's more clear. I think there may be political uses that are outside of the scope of electoral, those aren't before the court today, but that are outside of the scope of what the term the electoral process means. And that's what the statute says. So I'm happy to have a discussion about, I see my time. But you prohibit that whole world outside of electoral. That's the point. It broadly stipends access to political questions, political issues. Isn't that the most fervent thing that we want to have access to? Well, what the state does, Your Honor, is when people provide their information in order to register to vote, the state says to the people, in effect, we understand that you're giving us sensitive information. You're giving this information to us so that you can participate in the electoral process. If somebody wants to come and get this sensitive information from us, we're just going to make sure that they're doing so only for a purpose related to why you're giving it to us in the first place. And I think the state can reasonably make that kind of determination, certainly in the context of providing access to information. What kind of purpose are they telling them that they could return it over to you? Pardon me, Your Honor? You said they understood they were only giving it for such purpose. What purpose do you say they returned over? Well, when a voter registers to vote, the purpose, and people may have different reasons, but ultimately the purpose is so that they can be on the list of voters and show up and be able to... Well, that's a political purpose. I don't disagree, Your Honor. It's an electoral purpose as well. But they have to... He has to certify that it's not for commercial solicitation. That's one of the things, yes, Your Honor. Or for any other purpose not related to the electoral process. Then it's all right if he's a Maryland registered voter. That's correct. If I make sure I got the disjunctive and the double negative. Does the record show here what all... what this information contains? As for a particular person. There's a voter registration... Social Security number, age, does it have all that stuff in there? There are different fields that are provided depending on the kind of list that is requested. The voter registration application itself that was rejected is attached to the complaint. And then we find the... Does the record show what a registered voter has to turn over to the state in order to become a registered voter? No, that's not in the record. Your Honor, the other page... Is that in a statute or somewhere? It's in the voter registration application. It would be somewhere where it would probably be judicially noted. I would say that that's correct, Your Honor. The other side of this application... This is page 23 of the appendix. This is the application for voter registration data that Mr. Fusaro submitted. The other side of this has information about the application, the different lists that can be obtained. And it lists in those... Next to each list it provides information about these are the fields that you'll get for each voter. Voting history, party affiliation, etc. So it'll list all that information for the court. And I'm happy to submit to the court the other information page that goes with this application so the court can see what fields it provides. But it wasn't presented to the district court? It wasn't presented to the district court, Your Honor. My time is up. Unless the court has additional questions, I will sit. Okay. Thank you. It's very tempting to go down this path that the residency or registered voter requirement can be so conveniently removed from the prohibitions on electoral process. And that's simply not true. We go to United Reporting, particularly the concurrences, which are made up of two concurrences joined by six justices who made up the majority. And they said this is going to be different. It's going to be different when you're providing a public record to other people for certain content-related purposes. That's going to raise a different issue, at least in the as-applied context. And United Reporting, though rejected on a facial challenge, went back to California where in district court there was a settlement by the LAPD, and United Reporting got its list. So I think it's very important to keep this in mind. I appreciate the panel really getting to the meat here of the problems with the vagueness here, the problems with this electoral process. Because when we look at this oath, and first of all, I do want to say that Mr. Pissarro signed this oath. He's bound to it. He would like to. He brought this challenge because he wants to go beyond the electoral process. But for purposes of this oath, no, he would only use it. He would abide by it and attempt to abide by that electoral process restriction. He's not waiting to get prosecuted before he challenges. This is a preemptive strike on that front. But he has not disclaimed that he would use this, should he get it, for the electoral process unless he won his challenge to that content provision. Content is important, too, particularly with Reed v. Townfield. When going to that, those two concurrences in United Reporting where they're saying, well, if it was a viewpoint-based discrimination, then we might have a problem here. Well, content-based restrictions are now just as powerful, too. And that's important even for this, again, third-party access. And looking again to page 20 of the Joint Appendix, the foreign business... The Supreme Court made it pretty clear that that California statute in United Reporting said it was not an abridgment of anyone's right to engage in speech, be it commercial or otherwise. It was simply a law regulating access to information in the hands of the police department. Now, how is this any more than that? This is limiting access to information in the hands of the record-keeper up there in Maryland. It limits the access to a registered voter in Maryland. And it says it can't be used for commercial purposes. But it goes a step further than that. It goes to the point where this oath, for anyone else who already has this list, cannot provide it to other people at it. You know, we see this. And again, the vagueness problems of electoral purpose are only amplified in the oath, where if you make the list available to the public or third parties or publish or republish the list in a way that even allows it, allows it to be used in that manner, this is nasty. But if we were going to rule in their favor, we'd have to expand United Reporting. I don't believe so. We'd have to go against the Supreme Court of the United States. Judge King, I respectfully disagree. This is right in the concurrence. This is what was predicted by the dissent that, look, this is going to be an indirect way to do what we could never do directly. We're going to get at people by denying third-party use, even provision of this list. So go out and buy it from some third party, and by the time they've built it, it's probably inaccurate. Go build it yourself using other public records. By the time that's done, it's probably inaccurate and out of date. I think, Chief Judge Gregory, I think you really are getting to the meat here. This is a political tool drawn from a large database for this one specific purpose, for the electoral process of citizens. And they're going to allow certain citizens to have it and use it, and they're going to deny it to other people. And this idea that, ah, well, it's just a public record. Now, I think, at the very least, in the as-applied context, this is different. And there's, even in Houchen, there's reservations. There's this hedging by the Supreme Court that one day a case like this was going to come along. Well, maybe you could, you know, if you don't win here, you could go to the Supreme Court and get them to straighten it out or expand it for you. Judge King, I would much prefer to win here. Then he might have to go up and get it straightened out. The other side. Go ahead. Yes, Your Honor. I see my time is almost up, and I return to where we began. This is an exception to public records doctrine. It's a clever form of censorship. I urge the panel to take a very close look at these public records cases and understand that it's probably IMS versus Sorrell that controls the third-party provision problems here, implicate access and come back to United Reporting and really provide an exception so that it was carved out by the concurrences in that case. Thank you. Thank you. We'll come down to the council and proceed to our final case for the morning.
judges: Roger L. Gregory, Robert B. King, Henry F. Floyd